(No. 28058.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN MACHUL, Plaintiff in Error.

*Opinion filed September 19, 1944.*

Martin O. Weisbrod, and Harry J. Busch, both of Chicago, for plaintiff in error.

George F. Barrett, Attorney General, and Thomas J. Courtney, State's Attorney, of Chicago, (Edward E. Wilson, John T. Gallagher, Melvin S. Rembe, and Joseph A. Pope, all of Chicago, of counsel,) for the People.

Mr. Justice Stone delivered the opinion of the court:

This is a writ of error sued out by plaintiff in error, John Machul, to review a judgment of conviction entered against him in the criminal court of Cook county on the charge of burglary and larceny, and his conviction under the Habitual Criminal Act. The assignments of error here relate to competency of evidence, prejudicial conduct on the part of the trial judge and the prosecutor, and error in instructions to the jury.

The facts as to which there is no dispute are that about 1 A.M. on April 1, 1943, police officers, who were cruising the streets of Chicago picked up plaintiff in error after observing him throw some metallic object over his shoulder into a nearby yard. Two of the officers left the car and approached plaintiff in error and asked him what he threw away, to which he replied that he had not thrown away anything. On learning that he did not have his draft card, he was taken to the squad car near which other officers were looking for the objects which plaintiff in error

threw away. They found a canvas glove, screw driver, flashlight and a loaded revolver. Just before Machul was apprehended the officers had observed an orange-colored car being driven by a man with a dark jacket. On the way to the station the officers pursued a man with a black jacket. Upon being asked the name of the driver of the car, Machul gave them the name and address of Rudolph Dreksler. Machul told the officers that Dreksler was the man they were pursuing. The squad car went to the home of Dreksler and about 3:30 A. M. he arrived there driving an orange-colored Buick coupe, and was arrested. In the car the officers found a bag containing 392 pennies.

It also appears without dispute that about 8 o'clock on the morning of April 1, 1943, the manager of an A. & P. store in the neighborhood where Machul was picked up, discovered, on entering the store, that it had been broken into and the door opening on an alley was standing open. A bag containing 392 pennies, approximately two cases of cigarettes amounting to 100 cartons, some hams, bacon and butter were missing.

Dreksler was also indicted and pleaded guilty. He was sentenced and testified for the People on the trial of plaintiff in error. He stated that they had entered this A. & P. store by breaking a skylight window and that they took meat, cigarettes and a bag containing 392 pennies, and that Dreksler's car was parked about a block from the store.

Three signed confessions of Machul were introduced in evidence as well as his oral statements. His first statement after being taken to the police station, about 1:55 A. M., April 1, was to the effect that he had thrown away the glove, flashlight, pistol and screw driver, which were found by the officers. He stated that he had been expecting to see Dreksler because the latter wanted to steal some chromium rims for his automobile wheels, and he was to meet him.

On offering the confessions of Machul his counsel objected on the ground that he had been mistreated by the

officers and his confessions were not voluntary. Hearing was had before the trial judge out of the presence of the jury at which Machul declared he had been beaten a number of times by the police officers. Each of the police officers or persons having anything to do with him after his arrest and prior to making the statements, was called, with the exception of one officer for whom subpoena had been issued but not served because of his absence from the city. Denial of mistreatment was made by all officers. To support Machul's contention that his confessions were not voluntary, he offered the testimony of one Kephart, who testified that he was arrested on March 31, 1943, about 3:00 o'clock in the morning, and was in the same cell with Machul; that at that time Machul had no marks of blood on him; that he was taken out by the officers and later brought back and put into another cell, and that while witness could not see his condition very well, he noticed spots of blood on the front of his shirt. On cross-examination it was shown that he was not arrested until April 2, 1943.

Dreksler testified that Machul was beaten and that he himself had been previously beaten. In contradiction, the officers having anything to do with the handling of Machul testified that there was no mistreatment of him, as did two men from the A. & P. store who were present during times when, as Machul testified, he was mistreated.

It is the duty of the court to hold a preliminary hearing out of the presence of the jury where objection to admissibility of confessions is made. On such hearing, discretion is vested in the trial judge. It is not necessary that he be convinced beyond a reasonable doubt of the voluntary character of the confessions, but he must not disregard the evidence of the accused and the witnesses in his behalf that the confessions were forced. The rule is that his decision will not be reversed unless this court is convinced that there was an abuse of discretion and the decision is manifestly against the weight of the evidence.

560

(*People* v. *Guido,* 321 Ill. 397; *People* v. *Fox,* 319 Ill. 606; *People* v. *Sweeney,* 304 Ill. 502.) The evidence given on behalf of Machul at this preliminary hearing was repeated before the jury and the latter had the opportunity to judge the weight and credibility of the witnesses. There was no error in admitting these confessions.

Error in the admission of other testimony is asserted. The testimony of police officer Captain Drury, who, in answer to a question relating to a conversation he had with Machul, stated that Machul "was leaving with the men to go around and identify various jobs he had pulled," was objected to. The court struck out this answer and instructed the jury to disregard it. A motion was made to withdraw a juror, which was denied. The answer was improper but it is clear the prosecutor could not have anticipated that the witness would make it. It was stricken out by the court. The error of this statement is not sufficient to justify reversal of the judgment.

It is next objected that one of the officers, in testifying regarding his trip to Dreksler's house, stated, in reply to an inquiry as to what the officers were looking for,— whether it was somebody,—the witness replied they were looking for a soldier's uniform. Objection to this testimony was sustained and the jury was instructed to disregard it. It is contended, however, that it brought out the fact that Machul was a soldier away from camp without leave. It is contended here that the answer was improper and though stricken and instructions given to the jury to disregard it, this did not cure the damage done. Objection was also raised to the admission of the second page of one of the confessions, which had to do with other burglaries or crimes and Machul's absence from military camp. It is apparent, however, that the identity of this second page of the confession was brought out on cross-examination. It was not offered originally by the People.

Under such circumstances, it was not error to admit the second page of the confession.

In *People* v. *Jackymiak,* 381 Ill. 528, cited by plaintiff in error's counsel, it was held improper for the prosecutor to deliberately, and with design to prejudice a defendant, cross-examine him as to his registration for military service. In *People* v. *Wells,* 380 Ill. 347, also relied on by Machul's counsel, the evidence objected to related to separate and distinct actions with reference to forgery of checks. It was sought to show these forgeries by recordak photographic reproductions. These were held inadmissible, as the loss of, or inability to produce, the originals was not shown. The case is not applicable here. Other objections to testimony, as well as the conduct of the prosecutor and trial judge, have been examined and we would not be justified in extending this opinion by discussing them here. We are convinced that no error in receiving the testimony, or in the conduct of the prosecutor, occurred which requires or justifies reversal of the judgment. We find no prejudicial conduct on the part of the trial judge.

Machul's counsel also object to two instructions. The first was instruction No. 3, which told the jury that it might disregard the entire testimony of witnesses who they believed had testified falsely "to any material matter," except in so far as it may be corroborated by other credible evidence or facts and circumstances in evidence. The claimed vice of this instruction is that it does not define "material matter." They cite *People* v. *Wells,* 380 Ill. 347, where it was held that the giving of an instruction in substantially the same language was error because no other instructions were given which apprised the jury of what were and what were not material issues of fact in the case. In this case the jury was also instructed as to the essential material facts constituting burglary and larceny. Thus the jury was informed of what constituted material matters

for their consideration in determining the guilt or innocence of the accused. Instructions are to be read as a series. The jury was sufficiently instructed on what constitutes "material matter" and the giving of this instruction was not error.

Instruction No. 7 is complained of. It told the jury that it had no right to disregard the evidence of any confession which the court permitted it to hear, and whether the confession is true or false, or partly true and partly false, was a question for it to determine. It is argued that this instruction omits the elements of duress, illegal incarceration or mistreatment which it should consider in determining the credibility of the confession. Reliance is placed on the holding of this court in *People* v. *Crabb,* 372 Ill. 347. In that case, unlike the one under consideration, no examination out of the presence of the jury was had to determine the admissibility of a statement which was unsigned and was reputed to have been made by the accused. In the case before us, instruction No. 7 includes all the elements necessary to properly instruct the jury on the weight and credibility of the evidence admitted, and it was not error to give it.

We are convinced that there is no reasonable doubt in this record as to Machul's guilt and that while the record is not free from error, no error was committed which would have a tendency to confuse or prejudice the jury, which could not logically, under the record, have returned any other verdict. Finding no error in the record requiring reversal, the judgment of the criminal court is affirmed.

*Judgment affirmed.*