Lynn Bridgewater, Plaintiff-Appellee, v. Bernard Wagoner, Defendant-Appellant.

Gen. No. 11,431.

Second District, First Division.
December 14, 1960.

Knight & Knight, of Rockford, for appellant.

Roald A. Jacobsen and Russell J. Goldman, of Rockford, for appellee.

McNEAL, J.:

Plaintiff, Lynn Bridgewater, incurred personal injuries when the vehicle in which he was riding collided

with a car driven by the defendant, Bernard Wagoner. A jury returned a verdict for plaintiff in the amount of $7500, judgment was entered thereon, and this appeal followed.

The evidence shows that on September 24, 1957, at about 7:45 A.M., plaintiff was riding in the right front seat of a vehicle being driven by Philip Ross in an easterly direction on a gravel road known as Spring Creek Road. Cletus Brandt was riding in the rear seat. The three men were going to work. They took turns driving their respective vehicles to and from work. The weather was clear and the road was dry. Defendant was driving his car in a southerly direction on an intersecting gravel road known as Easton Road. He was alone in his vehicle and going home from work. The view was obstructed by a stand of corn at the northwest corner of the intersection. The two vehicles collided at the intersection, and plaintiff received various injuries, including fractured ribs, facial lacerations, a neck injury and fluid in one lung. His hospital and doctor bills and loss of wages exceeded $3000.00.

The evidence is in dispute as to the relative speeds of the vehicles, as to which vehicle entered the intersection first, and as to the exact point of impact. The driver of the car in which plaintiff was riding testified that he was going about 40 or 45 miles per hour, that when he first saw the car driven by defendant it was the same distance from the intersection as he was, that defendant was going at about the same rate of speed, that he slammed on his brakes and swerved right, the defendant swerved left, and the two vehicles came together in the southeast corner of the intersection. Defendant testified that he was driving 35 miles per hour, that he did not slacken speed as he approached the intersection, that he did not look to the left or right but looked straight ahead, that he did

not know he was approaching or in an intersection, and that the Ross vehicle struck his vehicle broadside while he was in the southwest corner of the intersection. Defendant called Brandt as his witness. Brandt testified that he was an occupant in the vehicle in which plaintiff was riding, that both vehicles were going 45 or 50 miles per hour, that they approached the intersection at the same time, and that the collision occurred in the southwest corner of the intersection. Thus, it is apparent from the record that there is a dispute as to the speed of the vehicles, as to who had the right-of-way, and as to the point of impact.

The defense urges that it is entitled to a judgment notwithstanding the verdict for the plaintiff. The rules governing a court of review in determining this question were recently restated in Lessen v. Allison, 25 Ill. App. 2d 395, 166 NE 2d 806:

> "Certain fundamental rules govern our determination of the question thus presented. We are precluded from weighing the evidence or undertaking to reconcile any conflict in the evidence. We must consider all the evidence in the aspect most favorable to the plaintiff, together with all reasonable inferences to be drawn therefrom. If, when so considered, there is any evidence, standing alone and considered to be true, together with the inferences that may legitimately be drawn therefrom, which fairly tends to support the jury verdict, the entry of judgment notwithstanding the verdict is properly denied."

■ We believe that there is evidence in the record from which the jurors could have concluded that defendant failed to maintain a proper lookout, failed to yield the right-of-way, and operated at a speed which was greater than reasonable and proper under all of the circumstances in evidence. Such being the case, the trial court properly denied defendant's motion for

judgment notwithstanding the verdict. See also Finley v. New York Cent. R. Co., 19 Ill. 2d 428, 167 NE 2d 212, and Lavender v. Kurn, 327 U.S. 645, 90 L. Ed. 916, 923.

The defense also contends that the verdict was against the manifest weight of the evidence. The rules to be applied in this situation were recently restated by this Court in Hocker v. O'Klock, 24 Ill. App. 2d 259, 164 NE 2d 225, 226:

> "The remaining assignment of error by defendants is that the verdicts against them are contrary to the manifest weight of the evidence. The principles governing the analysis of the evidence have been often repeated and are well established. The verdict must be clearly against the preponderance of the evidence, and it is the duty of the Appellate Court not to reverse a verdict on disputed questions of fact, Baim v. Cadillac Automobile Co. of Illinois, 169 Ill. App. 540. When the opposite conclusion to that reached by the jury is not clearly evident, the jury's verdict should not be disturbed, Bogovich v. Schermer, 16 Ill. App. 2d 197, 147 NE 2d 711, and some courts have even stated that the necessity of an opposite conclusion must appear from the evidence, DeLong v. Whitehead, 11 Ill. App. 2d 330, 137 NE2d 276. The question of fact raised by the proof need only be a fair one, Krug v. Armour & Co., 335 Ill. App. 222, 80 NE 2d 386, or as summarized in one decision, the word "manifest" means "clearly evident, clear, plain, indisputable", Schneiderman v. Interstate Transit Lines, 331 Ill. App. 143, 72 NE 2d 705, 706, affirmed 401 Ill. 172, 81 NE 2d 861."

We cannot say that the jury's verdict in this case was obviously wrong. Consequently we feel that the trial court properly denied defendant's motion for

205

a new trial based on the contention that the verdict was contrary to the manifest weight of the evidence. See also Stilfield v. Iowa-Illinois Gas & Elec. Co., 25 Ill. App. 2d 478, 167 NE 2d 295, and Tennant v. Peoria & Pekin Union R. Co., 321 US 29, 88 L. Ed. 520.

The defense also complains about the court's refusal to give certain instructions. Counsel for the defense, however, has not set out these instructions in his brief, and counsel for plaintiff has not filed any brief in this case. Consequently it has been necessary for us to go to the record and to make an independent research of the various questions raised. At the outset we note that each side in this case tendered 20 instructions, so that the trial court was confronted with a total of 40 instructions and three special interrogatories. The issues in this case were simple, and we have observed that courts of review are reluctant to reverse a case because of alleged error in the instructions where the party complaining has himself tendered an excessive number of instructions. See Borst v. Langsdale, 8 Ill. App. 2d 88, 96, 130 N.E.2d 520, and Romines v. Illinois Motor Freight, Inc., 21 Ill. App. 2d 380, 386, 387, 158 N.E.2d 97.

The most serious question raised with reference to the instructions is the complaint that the trial court erred in refusing certain instructions and a special interrogatory based on the theory that Ross and plaintiff were engaged in a joint enterprise and if the jury so found, then any negligence on the part of Ross should be imputed to the plaintiff. There is no dispute in the evidence on this point. Ross owned and was driving the car in question. Plaintiff and Brandt were riding in it. There was no sharing of expenses. The three men worked for the same employer and took turns driving their cars back and forth to work.

In Fisher v. Johnson, 238 Ill. App. 25, the plaintiff and his driver, MacNutt, worked at Western Electric

and took turns driving their cars back and forth to work. The Court said, page 30:

"But it is urged that upon the above state of facts, if MacNutt was negligent, his negligence would be imputed to Fisher. The theory of such contention is that Fisher and MacNutt were at the time engaged in a joint enterprise. We do not think the arrangement can be so regarded. To be sure it was one for their mutual accommodation, a day to day affair, but it involved no common financial interest, no partnership, no relation of master and servant, or principal and agent, and no right of either to direct or control the other in the management of his car. The parties being neighbors and social friends, engaged at the same place of business, evidently regarded it unnecessary because of such relations to drive two automobiles to their place of business and leave them there all day unused, when one would suffice, and the other could be left for the use of the owner's family. Such a scheme of mutual accommodation did not clothe the arrangement with any characteristic of a joint enterprise, to which the doctrine of imputable negligence may be applied."

See also Restatement of the Law of Torts, Sec. 491, which contains the following illustration:

"1. A and B are partners in a business carried on in the City of X. They live in adjacent houses in a suburb of X. The partners drive to town one day in A's car, another day in B's car. In neither case is the drive to their office in X a joint enterprise of A and B."

We have studied the cases cited on behalf of defendant but in a number of them the actual holding was that no joint enterprise was involved and the driver's

207

negligence could not be imputed to the passenger. See Johnson v. Turner, 319 Ill. App. 265, 280; Schmalzl v. Derby Foods, Inc., 341 Ill. App. 390, 394, 94 N.E.2d 86; and Staken v. Shanle, 23 Ill. App. 2d 269, 278, 162 N.E.2d 604.

The Illinois authorities lay down the rule that the driver's negligence should not be imputed to the passenger unless the driver and passenger are engaged in a joint or common business enterprise and the passenger has some control or some right to control the operation of the automobile, and the right of control is stressed by the authorities generally. 60 C.J.S., Motor Vehicles, sec. 444, page 1142, reads: "The express or implied right to control the automobile or the manner of its operation is the basis for liability." Also 5A Am. Jur., Automobiles and Highway Traffic, Sec. 826, page 765, reads: "In order to constitute a joint enterprise for the purpose of this rule it is generally held that there must be a common purpose and a community of interest in the object of the enterprise and an equal right in the driver and occupant to direct and control the conduct of each other with respect thereto." In other words, the occupant of a vehicle should not be held responsible for the manner in which it is operated unless he has some control or some right to control the manner of its operation.

In the case at bar there is no evidence that plaintiff and Ross were engaged in any joint business venture, nor is there any evidence that plaintiff had any control over the operation of the vehicle. The trial court was correct in refusing the instructions and interrogatory on this point. Submitting this issue to the jurors could only have confused them and diverted their attention from the real issues in the case.

We have considered the other points raised, including the contention that Ross was driving as plaintiff's servant or agent, but we do not believe

208

that they are substantiated by the record. Plaintiff was merely a passenger. He received serious injuries and substantial monetary losses in a collision which was no fault of his. The jury was fully justified in returning a verdict against the defendant. Plaintiff would have been entitled to a verdict even if both drivers were at fault, because his driver was not his agent, nor was he on a joint venture with the driver of the vehicle in which he was riding.

In view of the foregoing we conclude that the judgment of the Circuit Court of Winnebago County was correct, and it should be and hereby is affirmed.

Judgment affirmed.

SMITH, P. J. and DOVE, J., concur.